IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff-Respondent,

v.                                    CIV 10-0713 RB/KBM
                                      CR   06-1795 RB

STEVE N. JACKSON,

        Defendant-Movant.

# PROPOSED FINDINGS
## AND
## RECOMMENDED DISPOSITION

    THIS MATTER is before the Court on Defendant Steve Jackson's *pro se*

motion seeking habeas relief under 28 U.S.C. § 2255.  *Doc. 1*.[1]  I have carefully

considered the entire record and the parties' arguments.  Because it is possible to

resolve the issues on the pleadings, and the record establishes conclusively that the

Petitioner is not entitled to relief, I find that an evidentiary hearing is not

---

[1]  Unless otherwise noted, citations to "Doc." are the documents filed in this civil action.
Although the federal form for initiating a § 2255 action is captioned "motion," as is the common practice
both in this Court and the Tenth Circuit, I refer to the document as a "petition."  *See e.g., United States v.
Shipp*, 589 F.3d 1084, 1086 (10th Cir. 2009) ("appeals the district court's denial of his 28 U.S.C. § 2255
habeas petition"); *United States v. Jose Garcia-Cardenas*, CIV 08-0382 LH/KBM (Doc. 7 at 2)
("Defendant raises three claims in his § 2255 petition").  Page citations for trial transcripts are to the court
reporter page numbering system, not the CM/ECF document page numbers.

necessary.[2]

# I.  Factual Background

Petitioner was a parolee and gave his supervising officers two addresses for his whereabouts.  One was the home of his aunt Ruby Patterson at "203 South Douglas" and the other was a home right across the street at "208 South Douglas," where Petitioner and his girlfriend Idela Royals sometimes stayed.  *See, e.g., United States v. Jackson*, 334 Fed. App'x 900, 902 (10th Cir. 2009).  Royals told the jury that the 208 home was a "family home" that Petitioner owned and had bought for his mother, and that he allowed family and friends to live there.  *See United States v. Jackson*, CR 06-1795 RB (Docs. 83, 83-1, 83-2  – 3/13/07 trial transcript at 86-87) (hereinafter *"Trial Transcript 3/13/07"*).

Both residences were subject to home visits by parole supervising officers. Petitioner answered the door at 208 after a seven-minute delay, during which the officers could hear scuffling.  Inside, the officers discovered drugs, sales

---

[2] *See* 28 U.S.C. § 2255(b) ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."); Rule 8(a), RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS ("If the motion is not dismissed, the judge must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted."); *see also e.g. United States v. DeJesus Fernandez*, 2010 WL 3422586, at *9 (10th Cir. Sept. 1, 2010) (A court need not hold an evidentiary hearing if 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.' . . .  The court reviewed the motion and files and records of the case and determined no evidentiary hearing was required.  We see no abuse of discretion.") (citing § 2255 and *United States v. Lopez*, 100 F.3d 113, 119 (10th Cir. 1996)), *cert. denied,* 2010 WL 4393084 (12/6/10).

paraphernalia, and ammunition.  The majority of what they found was in plain view.  In the kitchen they found digital scales containing drug residue, baggies, razor blade protectors, and latex gloves.  In the master bedroom, they found a picture of Petitioner, mail addressed to him at the 208 address, packages of baggies, bags of latex gloves, and a box of razor blades.  In another bedroom, they found a box of ammunition and a man's jacket with a baggie of crack cocaine in the pocket.  Noticing that the ceiling door to the attic was askew, one officer opened it.  He immediately saw a bag, which contained a baggie of crack cocaine, and later discovered other baggies of crack cocaine stashed in the interior of the attic.  They arrested Petitioner.  *See Jackson*, 334 Fed. App'x at 902-03.

The United States subsequently charged Petitioner with "knowingly and intentionally possess[ing] with intent to distribute 50 grams and more" of the crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A).  It also charged him as an aider and abettor under 18 U.S.C. § 2. *United States v. Jackson*, CR 06-1795 RB (Doc. 10).  Because of his three prior state felony convictions for "drug offenses" (possession of cocaine, trafficking cocaine, and distribution of methamphetamine), Petitioner was subject to a federal sentencing enhancement pursuant to 21 U.S.C. § 851 of "[i]mprisonment to life imprisonment without release." *Id.* (Doc. 39 at 1, citing 21 U.S.C. § 841(b)(1)(A)); *see also id.* (Docs. 30, 30-1, 30-2, 39).

Within days of Petitioner's arrest, "Johnson" a/k/a "Joseph" a/k/a "Joe" Armstrong signed an affidavit prepared by Petitioner's then-attorney.  Armstrong is Petitioner's friend, perhaps a distant cousin, and certainly someone Petitioner considered to be "family."  *See Jackson*, 334 Fed. App'x at 903; *Trial Transcript 3/13/07* at 86-87; *United States v. Jackson*, CR 06-1795 RB (Doc. 49 at 2-3); *id.* (Doc. 49-1) (hereinafter "*Armstrong Affidavit*"); *id.* (Doc. 49-2 at 2) (hereinafter "*DEA Form*"); *id.* (Doc 82 – 3/12/07 trial transcript at 17) (hereinafter *"Trial Transcript 3/12/07"*).  Armstrong's affidavit provides in pertinent part that:

1. My name is Joe Armstrong. . . .
2. [208] is a residence in which I stayed on many occasions.
3. I understand that [officers] went to [208], searched the residence and found a quantity of cocaine, both powder and crack.
4. I further understand that Stevie Jackson was arrested for these drugs.
5. The cocaine found in the above listed residence was mine, not Stevie Jackson's.
6. I understand that with this affidavit, I am subjecting myself to potential prosecution but I cannot let another person go to prison for something that belonged to me.

*Armstrong Affidavit.*  The affidavit is silent about the other seized items that relate to drug trafficking, and what was occurring at Petitioner's home.

After the Assistant United States Attorney received a copy of the affidavit, Armstrong was interviewed by DEA and Drug Task Force agents.  Special Agent

Johnson summarized their conversation in writing.  Armstrong originally told the agents that the drugs "belonged to him," but "eventually recanted" and said that "the cocaine did not belong to him and that he was only trying to help out" Petitioner.  *DEA Form* at 1.  Armstrong further told them that he decided to help out Petitioner after talking with someone named Bruce Darden about Petitioner's arrest.  Darden told Armstrong that "if [he] wanted to help [Petitioner] out, [he] could say that the cocaine belonged to him."  *Id*.  After Armstrong agreed to help, someone named Kenneth Johnson took Armstrong and Darden to the attorney who prepared the affidavit.  *Id.* at 1-2.  Armstrong "figured [Petitioner] would take care of him for claiming the cocaine once [Petitioner] got out of prison."  *Id.* at 2.

James Klipstine, not the attorney who prepared the affidavit, entered an appearance soon after the preliminary hearing and represented Petitioner throughout the trial and appeal.  Before trial, he interviewed and video recorded Armstrong, but did not place him under oath.  *E.g., Jackson*, 334 Fed. App'x at 903.  Armstrong reversed course again and told Mr. Klipstine that the drugs were his, he was living at 208 with permission from Petitioner's sister, and he did not know who owned the jacket where some of the drugs were found.  *Id.*  He also told Mr. Klipstine that he "only told the DEA agents that [the drugs] were not his because they had intimidated him."  *United States v. Jackson*, CR 06-1795 RB

(Doc. 49 at 2).

Mr. Klipstine filed a notice of intent to introduce the Armstrong affidavit and video recording either under the hearsay exception for statements against interest or under the residual hearsay exception. *Id.* (Doc. 42).  In pretrial briefing, the United States noted that the defense had subpoenaed Armstrong to testify and that counsel has been appointed to represent him.  It conceded that if Armstrong invoked his Fifth Amendment privilege, then he would be "unavailable," and also conceded that his statement was against his interest.  It argued, however, that his assertions were vague and unsupported by any corroborating evidence to show trustworthiness and thus inadmissible under either hearsay exception. *Id.* (Doc. 49 at 3-5).  Presiding District Judge Robert Brack agreed, holding that

> Mr. Jackson has not established any corroborating circumstances to show, let alone clearly indicate, the trustworthiness of the statements.  The close relationship between Mr. Armstrong and Mr. Jackson provides a reason for Mr. Armstrong to help Mr. Jackson by fabricating a story that the crack belonged to him.  Mr. Armstrong's belief that Mr. Jackson would "take care of" Mr. Armstrong in return for the statement further undercuts trustworthiness.
>
> The vagueness of the statements further weighs against a finding of trustworthiness. *See Spring*, 80 F.3d at 1461 (finding vagueness of statement germane to inquiry).  The statements neither identify the date when the arrest occurred nor the circumstances surrounding how the crack claimed by Mr. Armstrong ended up in the residence at 208

South Douglas.   The statements include no identifying information concerning the crack quantity or the packaging of the crack claimed by Mr. Armstrong.  There is no way to ascertain from the statements whether the crack claimed by Mr. Armstrong was the same crack that is the subject of the charge against Mr. Jackson.

\* \* \* \* \*

In addition to having insufficient corroboration, Mr. Armstrong's statements do not necessarily exculpate Mr. Jackson.  *See United States v. Perez*, 963 F.2d 314, 316 (10th Cir. 1992) (affirming exclusion statement that did not necessarily exculpate the accused).   Although the statements may tend to incriminate Mr. Armstrong, they do not necessarily exculpate Mr. Jackson, who is charged with knowingly possessing the crack with intent to distribute it. The fact that Mr. Armstrong may have owned the crack is not necessarily determinative of whether Mr. Jackson knowingly possessed it.

*Id.* (Doc. 58 at 3-5).

Prior to *voir dire*, Armstrong appeared with his attorney, took the stand, and invoked his Fifth Amendment rights.  *Trial Transcript 3/12/07* at 17-23.  Mr. Klipstine then made a record of his position.  He argued that allowing trial to proceed without the affidavit and video statement would constitute a denial of his fundamental rights either because the DEA interview with Armstrong constituted governmental coercion or, because in a weak prosecution case based on constructive possession, the defense would be unable to present the key witness to support its theory that Armstrong was the guilty party.  *See id.* at 19-22, 25-30.  He

cited *Chambers v. Mississippi*, 410 U.S. 284 (1973), *Holmes v. South Carolina*, 547 U.S. 319 (2006), *United States v. Serrano*, 406 F.3d 1208 (10th Cir.), *cert. denied,* 546 U.S. 913 (2005), and *United States v. Smith*, 997 F.2d 674 (10th Cir.), *cert. denied,* 510 U.S. 937 (1993), in support, but was unable to cite a case for the proposition that prior inculpatory statements vitiate a subsequent invocation of the Fifth Amendment. *See Trial Transcript 3/12/07* at 19-20, 25, 29, 32-33.

Judge Brack ruled that, like his prior decision, he does not believe the Armstrong statements necessarily absolved Petitioner of criminal responsibility because the drugs could have been jointly possessed. He also was unaware of any authority holding that "prior inculpatory statements . . . constitute an everlasting waiver of the Fifth Amendment." *Id.* at 34. Accordingly, Armstrong did not testify for the prosecution or the defense. Nor were his affidavit or video recording introduced or referred to during *voir dire* or trial. Petitioner's aunt and girlfriend testified for the defense. Following conviction by the jury on all counts, Judge Brack sentenced Petitioner to life imprisonment. *E.g., Jackson*, 334 Fed. App'x 902.

## II.  Initial Considerations

### A.  The Petition Is Timely And Not "Successive"

Petitioner is housed at the United States Penitentiary in McCreary,

Kentucky.[3]  His first post-conviction action was an unsuccessful attempt to secure habeas relief under § 2241.  He filed that petition in the United States District Court for the Eastern District of Kentucky and argued that his life sentence violated the Eighth Amendment as "grossly excessive" and because it was based higher penalties for crack versus powder cocaine that have since been disavowed. He did not challenge his conviction.  *See, e.g., Jackson v. Wilson*, CIV 10-39 GFVT (Doc. 1 at 3-15); *see also Jackson v. Wilson*, 2010 WL 1038070 (E.D. Ky. 3/17/10) (slip copy of Westlaw opinion in case number 0-39-GFVT).  Within days, the court dismissed the action because "Jackson has not demonstrated that his available remedy under 28 U.S.C. § 2255 is inadequate or ineffective to challenge his federal conviction and sentence."  *Jackson*, 2010 WL at *1.

Petitioner then timely filed his § 2255 petition with this Court.[4]  He raises a total of seven claims.  The first five assert that Mr. Klipstine was ineffective at trial or on appeal.  The other two claims challenge his sentence, and are identical in

---

[3]  His location and inmate number is available on the return envelope of his petition, *see Doc. 1* at 33 (inmate number 28454-051 mailed from the penitentiary in McCreary, Kentucky) and is verifiable through the Bureau of Prisons inmate locator website.  *See* http://www.bop.gov/iloc2/LocateInmate.jsp (result for "Steve Nathanie (sic) Jackson," inmate 27354-051 serving life sentence in penitentiary in McCreary, Kentucky).

[4]  The Tenth Circuit issued its decision on June 24, 2009.  The record does not reflect that defense filed a petition for certiorari with the Supreme Court of the United States.  Petitioner's conviction thus became "final" on Tuesday, September 22, 2009 – ninety-days after the Tenth Circuit issued its decision. Even with his efforts at § 2241 relief elsewhere, Petitioner filed his § 2255 petition on July 26, 2010, well within one year of the finality date.  *E.g., United States v. Carbajal-Moreno*, 332 Fed. App'x 472, 474-75 (10th Cir. 2009).

substance to the claims he raised in his

§ 2241 petition.

"A 'successive petition' raises grounds identical to those raised and **rejected on the merits** on a prior petition" but here the Eastern District of Kentucky did not dismiss on the merits. *Kuhlmann v. Wilson*, 477 U.S. 436, 445 n.6 (1986) (emphasis added; citing *Sanders v. United States*, 373 U.S. 1, 15-17 (1963)).  In addition, the Tenth Circuit recently held § 2241 petitions do not qualify as a "prior petition" under the statute governing successive § 2255 petitions.  *See Stanko v. Davis*, 617 F.3d 1262, 1267 (10th Cir. 2010) (construing 28 U.S.C. § 2255(h)), *petition for cert. filed 10/22/10*.  Thus, despite the overlap of two sentencing issues, the § 2255 petition should not be characterized as "successive."

### B.  Effect Of Assertion Of "Actual Innocence"

I must construe the *pro se* petition liberally.  *E.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520-21(1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991).  In his introduction of Claim 2, Petitioner asserts that he "is **actually innocent** and the failure to allow [him] a new trial and to present a defense would result in a complete miscarriage of justice, in violation of the Fifth, Sixth and Fourteenth Amendments. *Doc. 1* at 1 (emphasis added).

Neither the Supreme Court, the Tenth Circuit or this district have held that a freestanding claim of "actual innocence" can be the basis for federal habeas relief. Two Supreme Court cases indicate that the claim might be raised in a capital case, but do not definitively resolve the issue. *See House v. Bell*, 547 U.S. 518 (2006); *Herrera v. Collins*, 506 U.S. 390 (1993).[5] The circuits are split whether *Herrera* and *House* permit a habeas court to entertain these claims and under what circumstances. *E.g., Montgomery v. Bagley*, 482 F. Supp. 919, 989 (N.D. Ohio 2007) (and cases cited therein), *aff'd,* 482 F.3d 440 (6th Cir. 2009), *rehearing en banc granted, opinion vacated 1/21/10.* Cases in the Tenth Circuit and in this district side with the view that such claims are not recognized.[6] Moreover, courts have applied this noncognizability rule regardless of whether the habeas petition challenges a state or federal conviction. *E.g., Arreskjold v. United States*, 707 F.

---

[5] In *Herrera,* the Supreme Court stated that "freestanding" claims of "actual innocence" are not cognizable in federal habeas and, instead, can be used as a gateway to permit a petitioner to raise an otherwise barred claim, but it assumed "for the sake of argument . . . that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." *Herrera*, 506 U.S. at 400-01, 404-05, 417. More recently, the Court declined to "answer the question left open in *Herrera*" and decide whether "freestanding innocence claims are possible." *House*, 547 U.S. at 554-55.

[6] *See LaFevers v. Gibson*, 238 F.3d 1263, 1265 n.4 (10th Cir. 2001) ("an assertion of actual innocence, although operating as a potential pathway for reaching otherwise defaulted constitutional claims, does not, standing alone, support the granting of the writ of habeas corpus."); *Sellers v. Ward*, 135 F.3d 1333, 1338-39 (10th Cir.) (noting that although the *Herrera* decision does not recognize "actual innocence" as an independent constitutional claim, it can serve as a "gateway" for procedurally-barred claims), *cert. denied,* 525 U.S. 1024 (1998); *Dombos v. Janecka*, CIV 09-200 JB/GBW (Doc. 104 at 30-31) (discussion of caselaw); *Bartlett v. Janecka*, CIV 06-564 JH/KBM (Doc. 26 at 16-18) (same); *Trujillo v. Hatch*, CIV 08-0012 JH/WPL (Doc. 13 at 13-14) (same); *Fresquez v. Bravo*, CIV 00-1409 JP/LFG (Doc. 38 at 30-32) (same).

Supp. 2d 1332, 1336 (S.D. Fla. 2010).  Thus, *if* Petitioner is attempting to raise a

freestanding claim of actual innocence, I find that it affords him no basis for

habeas relief.

It is more likely that he is not actually raising a freestanding innocence

claim.  The wording of Claim 2 indicates that his challenge focuses on the

Armstrong evidentiary ruling having allegedly hampered the defense.  Related

Claim 3 asserts that Mr. Klipstine was ineffective on appeal for failing to challenge

Judge Brack's denial of a motion of acquittal on the ground that there was "a

complete lack of evidence."  *Doc. 1* at 1.  His detailed explanation for these claims

underscores that Petitioner is raising something other than a freestanding

innocence claim.  There, Petitioner asserts that the Government was required to

show a link between him and the drugs, and that his mere proximity to them is

insufficient.  *Id.* at 6-7.  He notes that despite Petitioner's specific request, Mr.

Klipstine failed to raise sufficiency of the evidence on appeal.  *Id.* at 8-9.  He

contends that Mr. Klipstine was "aware of the complete lack of evidence (direct,

circumstantial or otherwise) that formed a link or nexus to the drugs, or that could

be used to infer knowledge or control of said drugs," and was aware that "someone

else confessed not only to the fact the drugs were his [and] that Petitioner had no

knowledge of the drugs being in that house."  *Id.* at 9-10.  As such, Petitioner

argues that a jury verdict was based upon "piling inference on inference." *Id.* at 9. In light of these assertions, I construe the petition as raising claims of constitutional dimension based on impermissible interference with presentation of the defense, sufficiency of the evidence, and Mr. Klipstine's alleged failure to raise a sufficiency of the evidence claim on appeal.

The utterance of "actual innocence," particularly when it is coupled with the phrase "complete miscarriage of justice," would seem to suggest that Petitioner anticipates a procedural bar because claims were not raised on direct appeal and because he first sought habeas relief under § 2241.  Indeed, the United States makes that argument with respect to the sentencing claims.  *See Doc. 8* at 20-21. In some instances a federal habeas court will excuse a timeliness, procedural, or successiveness bar, and entertain the merits of the barred claim.  Establishing "actual innocence" is one alternative to open the "gateway" for such defaults, and the phrase "miscarriage of justice" is one way decisions have historically expressed the "actual innocence" avenue.  Another way to excuse certain defaults is by establishing ineffective assistance of counsel as "cause" and "actual prejudice" as a result. *E.g., House*, 547 U.S. at 536-37; *United States v. Bousley*, 529 U.S. 614, 622 (1998); *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Murray v. Carrier*, 77 U.S. 478, 496 (1986); *United States v. Challoner*, 583 F.3d 745, 749 (10th Cir. 2009);

*United States v. Ellsworth*, 296 Fed. App'x 612, 614 (10th Cir. 2008).  Timeliness and successiveness are not at issue, but I will proceed to the analysis based on the assumption that Petitioner wants to counter any possible default issue on ineffectiveness and/or innocence/justice grounds.

## III.  Analysis

### A.  *Strickland Standard Of Review & Effect Of Direct Appeal*

To establish ineffective assistance of trial or appellate counsel under *Strickland v. Washington,* 466 U.S. 668 (1984), Petitioner must establish two things – that counsel's conduct was constitutionally deficient and that, but for the conduct, the result of the proceeding would have been different.  *E.g., Burghuis v. Thomkins*, ___ U.S. ___, 130 S. Ct. 2250, 2264 (2010); *Strickland*, 466 U.S. at 687, 694; *Challoner*, 583 F.3d at 749.  Failure to make either showing defeats the claim.  *E.g., Smith v. Robbins*, 528 U.S. 259, 286, n.14 (2000); *Strickland*, 466 U.S. at 687; *United States v. Orange*, 447 F.3d 792, 796-97 & n.5 (10th Cir. 2006).

It is the rare instance where a trial record is sufficiently developed such that an ineffective assistance of counsel claim can be brought and decided on direct appeal.  In recognition of this, ineffective assistance of counsel claims are not procedurally barred for failing to raise them on direct appeal.[7]  Conversely, ***issues***

_____

[7] *See, e.g., Massaro v. United States*, 538 U.S. 500, 508 (2003) (acknowledging that "[t]here may be cases in which trial counsel's ineffectiveness is so apparent from the record that appellate counsel will

that have been disposed of on direct appeal cannot be relitigated in a § 2255

proceeding, even when they are recast as an ineffectiveness claim.[8]  As such, an

issue decided on direct appeal may be fully dispositive of an unbarred

ineffectiveness claim.  *E.g., United States v. Davis*, 2010 WL 5191926 (10th Cir.

12/23/10) (affirming decision of this Court: "Further, Davis cannot show prejudice.

We rejected the substance of Davis's post-9/11 argument on direct appeal. We will

not re-visit the merits of Davis's argument even though it is now couched as an

ineffective assistance of counsel claim.").  That is the case here.

### B.  The Basis Underlying All Of The Ineffectiveness Claims Were Decided On Direct Review

At trial, Judge Brack denied the motion for judgment of acquittal because:

---

consider it advisable to raise the issue on direct appeal," but not requiring the same, and holding that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255"); *United States v. Porter*, 405 F.3d 1136, 1144 (10th Cir. ) ("a defendant must generally raise claims of ineffective assistance of counsel in a collateral proceeding, not on direct review. . . .  This rule applies even where a defendant seeks to invalidate an appellate waiver based on ineffective assistance of counsel."), *cert. denied,* 546 U.S. 980 (2005); *United States v. Galloway*, 56 F.3d 1239, 1242 (10th Cir. 1995) (" Some rare claims which are fully developed in the record may be brought either on direct appeal or in collateral proceedings.  No procedural bar will apply to claims which could have been brought on direct appeal but were brought in post-conviction proceedings instead.").

  [8]  *See, e.g., United States v. Cook*, 997 F.2d 1312, 1318 (10th Cir. 1993) ("We fully addressed the second allegation on direct appeal. . . .  Therefore, the issue is not cognizable under § 2255."); *United States v. Prichard*, 875 F.2d 789, 790-91 (10th Cir. 1989) ("We believe the other two issues raised in the motion to vacate were fairly encompassed in Prichard's direct appeal. . . .  Absent an intervening change in the law of a circuit, issues disposed of on direct appeal generally will not be considered on a collateral attack by a motion pursuant to § 2255."); *United States v. Varela-Ortiz*, 189 Fed. App'x 828, 830 (10th Cir. 2006) ("Because we already disposed of this issue on direct appeal, Mr. Varela-Ortiz may not raise it again in a § 2255 petition."); *United States v. Anderson*, 17 Fed. App'x. 855, 858 (10th Cir. 2001) ("[a]lthough cloaked in the guise of an ineffective assistance claim, this is the same issue decided on direct appeal and cannot be raised again in a § 2255 motion.").

the jury could find from the evidence presented more than mere presence that Mr. Jackson owned the home. He told his parole officer that he was living there on at least an occasional basis. He was found there. There was a significant delay and movement in the house. I think one witness described it as scurrying around the house while the officers were requesting to be admitted into the home or for him to present himself. And with the amount of materials that were found in the home, both the narcotics and packaging materials, Mr. Jackson being the only adult in the home, those facts taken together I believe – if believed by the jury, they could find that the Government has made a case.

*Trial Transcript 3/13/07* at 79.

On direct appeal, Mr. Klipstine argued that: the affidavit and video recording were admissible hearsay; the DEA interview violated due process because the agents said they would either leave "with Armstrong or the truth;" and by allowing Armstrong to invoke the Fifth Amendment, Judge Brack impermissibly infringed Petitioner's constitutional right to present a defense.

The Tenth Circuit rejected each claim. Like Judge Brack, it specifically found that the excluded Armstrong evidence was neither trustworthy nor exculpatory and therefore did not qualify for either hearsay exception. *See Jackson*, 334 Fed. App'x at 909-11. It specifically found that even if the agents uttered the "leaving with you or the truth" phrase, it did not constitute coercion or violate due process. *Id.* at 907-08. After stating that the issue was whether "the

district court infringed upon his constitutional right to present a defense," *id.* at 905, the Tenth Circuit concluded that there was no error in allowing Armstrong to take the Fifth Amendment, *id.* at 905-07.  In the course of this analysis, it specifically noted that:

> A criminal defendant has a constitutional right to present a defense, including the right to present witnesses, and such right is "essential to a fair trial." . . .  However, that right, while fundamental, is not absolute. . . .  In certain cases, "a defendant's right to present a defense must bow to accommodate legitimate, competing interests in the criminal trial process." . . .  One of these interests is the Fifth Amendment privilege of a witness not to incriminate himself.

*Id.* at 905.

Moreover, the Tenth Circuit concluded by holding that even if the drugs did belong to Armstrong, the evidence was nonetheless sufficient to convict Petitioner on a theory of aiding and abetting liability:

> Armstrong's statements lacked sufficient guarantees of trustworthiness.  And the statements, while clearly implicating Armstrong, did not necessarily exculpate Jackson.  In addition, Jackson was charged with aiding and abetting.  ***Therefore, even assuming it was Armstrong not Jackson who possessed the cocaine with intent to distribute, Jackson could still be convicted of aiding and abetting Armstrong.***  In fact, over Jackson's objection, the court included an aiding and abetting jury instruction because there was sufficient evidence for a jury to find that ***even if Jackson himself did not possess the cocaine with intent to distribute, he aided and abetted that conduct by***

> **hiding the cocaine when the officers arrived at the house.**
> *See United States v. Perez*, 963 F.2d 314, 316 (10th Cir.
> 1992).

*Id.* at 910-11 (emphasis added).

Thus, the Tenth Circuit explicitly decided there was no agent coercion in violation of due process, at least implicitly decided the issue of whether exclusion of the Armstrong evidence impermissibly interfered with the constitutional right to present a defense, and explicitly decided that the evidence was sufficient to support the verdict on an accessory liability. Like Judge Brack, the Tenth Circuit concluded that there was sufficient evidence to convict Petitioner for his ***active*** role in aiding the distribution efforts that were occurring in his home, and that he was not convicted simply because of his mere presence there. In deciding the sufficiency issue then, the Tenth Circuit essentially found that any error concerning exclusion of the Armstrong evidence was harmless,[9] because it was immaterial to

---

[9] The issue as presented in Appellant's brief on appeal was whether Petitioner "was denied a fair trial because he was prevented from presenting exculpatory evidence." *United States v. Jackson*, App. Case 07-02212 (Doc. 0101413737 at 3). The United States, among other things, argued harmless error:

> Armstrong's statements did not necessarily exculpate Jackson. Consequently, even if the district court abused its discretion by excluding the statements, the error would be harmless. . . . Although Armstrong's claim that the drugs belonged to him may have incriminated Armstrong, the statements did not necessarily show that Jackson had not possessed the same drugs. Jackson's conviction for possession of cocaine base did not require that the government prove Jackson's "legal ownership" of the drugs. . . . As a result, the drugs could have "belonged" to Armstrong as he claimed, but Jackson still could have possessed those same drugs at the time of the seizure. . . . Because Armstrong's statements "did not tend to exculpate [Jackson] for the crimes with which he was charged, any possible

the aiding and abetting liability if the drugs in fact had belonged to Armstrong.

In light of the Tenth Circuit's rulings, the issues of agent coercion, presentation of the defense and sufficiency of the evidence are not subject to relitigation in this § 2255 matter.  Those rulings, particularly the sufficiency ruling, are also dispositive of the ineffectiveness inquiry.  Whether or not Mr. Klipstine briefed the issue of sufficiency on appeal is of no consequence, *see supra* note 9, because the issue was in fact decided.  Thus, there can be no deficient conduct or prejudice for Claim 3 where Petitioner asserts Mr. Klipstine was ineffective for failing to challenge Judge Brack's denial of judgment of acquittal on the basis there was a "complete lack of evidence."  The same is true for Claim 2 where Petitioner asserts he was not permitted "to present a defense" to show he was "actually innocent."  *See Doc. 1* at 1, 6-9.

Similarly, since Armstrong's ownership of the drugs has no bearing on the constitutionality of Petitioner's conviction, he cannot establish ineffectiveness or prejudice for Claim 5 where he asserts Mr. Klipstine failed to request DNA testing of the box of gloves, used gloves found in the garbage, and the cocaine from the jacket pocket.  *See id.* at 1, 12.  The same reasoning applies to Claim 1 where

---

error was necessarily harmless." . . .  This Court should affirm Jackson's conviction.

*Id.* (Doc. 01011723467at 27-28).

Petitioner asserts that Mr. Klipstine failed to: call his aunt to testify live, where she could have been asked about what Armstrong told her; call Johnson, who drove Armstrong to the attorney's office to sign his affidavit; call the attorney who prepared the affidavit; or call the notary who notarized Armstrong's signature. *Id.* at 1, 3-5.  The same reasoning applies to Claim 4 where Petitioner asserts that Mr. Klipstine should have requested an evidentiary hearing to prove that the agents coerced Armstrong to say that the drugs were not his since the Tenth Circuit expressly decided there was no due process violation as a matter of fact and law. *See Jackson*, 335 Fed. App'x at 908.

Because all of the ineffectiveness claims seek to relitigate issues that have been decided and because the resolution of those issues is dispositive of the *Strickland* inquiry, I find all of these claims without merit.

### C.  *Alternative Basis For Denying The Ineffectiveness Claims*

There are additional independent reasons why all of Petitioner's ineffectiveness claims  fail as a basis for habeas relief.  Each claim centers around the notion that because evidence existed that Armstrong owned the drugs, the defense was entitled to have the jury hear it.  Each claim also is based on the logic that, had Mr. Klipstine done something more, he could have shown that the Armstrong evidence was trustworthy, which would have led to the introduction of

the evidence, and the jury then would have acquitted him because he did not

possess the drugs or know that they were in his home.  Petitioner is mistaken on

both counts.

A criminal defendant has a constitutional right to present evidence that is

relevant to the defense.[10]  The right is not "unfettered," however.[11]  It is trumped by

a witnesses' invocation of the Fifth Amendment and also subject to applicable

evidentiary rules.[12]  The Tenth Circuit specifically noted and held the same on

direct appeal – "In certain cases, 'a defendant's right to present a defense must bow

to accommodate legitimate, competing interests in the criminal trial process.' . . .

One of these interests is the Fifth Amendment privilege of a witness not to

---

[10]  *See, e.g., Crane v. Kentucky*, 476 U.S. 683, 690-91 (1986) ("[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense."); *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973) ("The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations.  The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process."); *Washington v. Texas*, 388 U.S. 14, 23 (1967) ( right to compulsory process provided by Sixth Amendment would be meaningless if the defendant lacked the right to use the witnesses whose presence he compelled).

[11]  *United States v. Pablo*, 625 F.3d 1285, 1296-97 (10th Cir. 2010) ("The Due Process Clause and the Compulsory Process Clause work together to ensure a defendant has the right to present a defense by compelling the attendance, and presenting the testimony, of his own witnesses. . . .  The right to due process includes a right to be heard and to offer testimony. . . .  And the right to compulsory process guarantees the defendant the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt. . . .  A criminal defendant's right to present a defense, however, is not unfettered.") (internal quotations and citations omitted); *United States v. Solomon*, 399 F.3d 1231, 1239 (10th Cir. 2005) ("As we have frequently stated, however, the right to present a defense is not without limits.").

[12]  *E.g., Montana v. Egelhoff*, 518 U.S. 37, 41-42 (1996); *United States v. Scheffer*, 523 U.S. 303, 308 (1998); *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006); *Chambers*, 410 U.S. at 302; *Pablo*, 625 F.3d at 1296.

incriminate himself." *Id.* at 905 (citing *United States v. Rivas-Macias*, 537 F.3d 1271, 1278 (10th Cir. 2008), *cert. denied,* 129 S. Ct. 1371 (2009), which in turn cites other Tenth Circuit decisions).

In its discussion of the hearsay exceptions, the Tenth Circuit rejected the argument that it should review Judge Brack's decision *de novo* rather than for an abuse of discretion simply because exclusion of the Armstrong statements "affected his constitutional right to present a defense." *Id.* at 908. It cited *United States v. Adams*, 271 F.3d 1236, 1243 (10th Cir. 2001), *cert. denied,* 535 U.S. 978 (2002), in support, a decision that noted that the defendant there confused the fundamental right "to present a theory of defense, with one that is not fundamental, the right to present that theory in whatever manner and with whatever evidence he chooses." *Id.* at n.3. Where, as here, the Tenth Circuit found there "was no abuse of discretion in the exclusion," of the Armstrong statements under the hearsay rules, then there can be "no impingement upon [Petitioner's] right to present his defense." *United States v. Nacchio*, 555 F.3d 1234, 1256 (10th Cir.) (citing *Chambers*, 410 U.S. at 302), *cert. denied,* 130 S. Ct. 54 (2009).

Furthermore, any error concerning the exclusion of the Armstrong statements is not of "structural" dimension.[13] Rather, an exclusion of evidence that

---

[13] *United States v. Solon,* 596 F.3d 1206, 1211 (10th Cir. 2010) ("The Supreme Court has only deemed errors structural in a "very limited class of cases." . . . These include: a total deprivation of the

results in constitutional error is subject to harmless error analysis. *See Neder v. United States*, 527 U.S. 1, 18 (1999); *see also Crane*, 476 U.S. at 691. The harmless error inquiry, however, does not mean that this Court will "become in effect a second jury to determine whether the defendant is guilty." *Id.* at 19. In the habeas context, the "*Brecht*" harmlessness test applies in 2255 cases – whether the error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see also, e.g., United States v. Dago*, 441 F.3d 1238, 1246 (10th Cir. 2006) ("Because both § 2254 and § 2255 give rise to collateral proceedings with similar purposes, and because finality in criminal convictions is an important consideration in both types of proceedings, we agree with the Ninth Circuit that the logic behind *Brecht* also is applicable in § 2255 cases.") .

This Court cannot relitigate the Tenth Circuit's decision on direct appeal on the sufficiency of the evidence, which in effect was a harmlessness finding. Although it did not apply the *Brecht* standard, it's reasoning is equally applicable here – the omitted Armstrong evidence has no bearing on the jury verdict.

---

right to counsel; the lack of an impartial trial judge; the unlawful exclusion of grand jurors of defendant's race; a deprivation of the right to self-representation at trial; the denial of the right to a public trial; and an erroneous reasonable-doubt jury instruction.") (quoting and citing *Johnson v. United States,* 520 U.S. 461, 468-69 (1997)).

### D.  Analysis Of The Sentencing Issues

The United States asserts that the sentencing issues are procedurally defaulted.  *See Doc. 8* at 7.  Because the issues can be "'more easily and succinctly'" decided on the merits, I find no further briefing is necessary to investigate whether an ineffectiveness or innocence/miscarriage exception may apply.  *Neill v. Gibson*, 263 F.3d 1184, 1198 (10th Cir. 2001) (quoting *Romero v. Furlong*, 215 F.3d 1107, 1111 (10th Cir.), *cert. denied,* 531 U.S. 982, 121 (2000)); *see also Haden v. United States*, 2009 WL 4060982, at *2 (N.D. Tex. 2009) ("Because it appears that movant is entitled to no relief on the alleged procedurally barred claim, the Court bypasses this procedural issue and proceeds to the merits of the claim.") (citing as analogous support the decision in *Busby v. Dretke*, 359 F.3d 708, 720 (5th Cir.), *cert. denied,* 541 U.S. 1087 (2004), where the Fifth Circuit recognized in a § 2254 case that "circumstances may warrant bypassing a question of procedural default when the allegedly barred claim is more easily resolved 'by looking past any procedural default'")).

Petitioner raises two related claims.  He contends that the statutory and Guidelines sentencing structure for crack cocaine constitutes cruel and unusual punishment and violates the Eighth Amendment.  *Doc. 1* at 14.  He asserts that "[n]o one can or will disagree that the 100-to-1 ratio creates a disparity [in

sentencing] that is unwarranted," and, accordingly, § 841 and the related guidelines must be held unconstitutional. *Id.* at 17.  The Tenth Circuit has long rejected these arguments. *See United States v. Robertson*, 378 Fed. App'x 789, 792 (10th Cir.) ("Our court has previously held, directly or indirectly, that the disparity in sentencing between crack and powder cocaine offenses does not violate the Eighth Amendment's ban on cruel and unusual punishment.") (citing *United States v. Williams*, 576 F.3d 1149, 1165 (10th Cir. 2009), *cert. denied,* 130 S. Ct. 1306 (2010), and *United States v. Brooks*, 161 F.3d 1240, 1247 (10th Cir. 1998)), *cert. denied,* 131 S. Ct. 364 (2010) .

Petitioner also argues that the "sentence of mandatory life for possession of 214 grams of crack cocaine is unacceptable due to the changing views of the justice department, federal judges, the sentencing commission, the present administration, the public, and the congress of the United States." *Doc. 1* at 25.  In his supplemental brief, Petitioner requests that the provisions of the recently passed Bill No. S 1789 or "Fair Sentencing Act," be applied to him. *See Doc. 7.*  The Bill, which became effective November 1, 2010, does not expressly apply retroactively. Indeed, several courts, including the Tenth Circuit, have held that it does not apply retroactively – "Congress finally took action recently, when it enacted the Fair Sentencing Act of 2010 [on Aug. 3, 2010]. . . .  It is not, however, retroactive and

thus does not apply to this case." *United States v. Lewis*, 625 F.3d 1224, 1228 (10th Cir. 2010).[14]  The Tenth Circuit further concluded that, aside from the new sentencing scheme, district judges are not required to independently consider the crack disparity or grant downward departures based on it.  *See id.* at 1228-29. Accordingly, Petitioner's sentencing claims are without merit.

Wherefore,

**IT IS HEREBY RECOMMENDED** that the § 2255 petition be dismissed.

**IT IS FURTHER RECOMMENDED** that no certificate of appealability issue.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

UNITED STATES MAGISTRATE JUDGE

---

[14]  *United States v. Carradine*, 621 F.3d 575, 580 (6th Cir. 2010), *rehearing en banc denied 12/15/10*; *United States v. Brewer*, 624 F.3d 900, 908-09 & n.6 (8th Cir. 2010); *United States v. Gomes*, 621 F.3d 1343, 1346 (11th Cir. 2010).